# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

RICARDO PADILLA NUNEZ,

    Petitioner,

v.

D. RAY JAMES CORRECTIONAL FACILITY; TRACY JOHNS; GEO GROUP, INC.; GEORGE ZOLEY; CHARLES SAMUEL; and BUREAU OF PRISONS,

    Respondents.

CIVIL ACTION NO.: 5:16-cv-12

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Ricardo Padilla Nunez ("Nunez"), who is currently incarcerated at D. Ray. James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondents filed a Response, and Nunez filed a Reply. (Docs. 13, 14.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Nunez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Nunez *in forma pauperis* status on appeal.

## **BACKGROUND**

Nunez was convicted in the Middle District of Florida, after entry of a guilty plea, of conspiracy to possess with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). (Doc. 13-1, p. 15.) He was sentenced to 120 months' imprisonment on October 21, 2008. (Id. at p. 16.). Nunez has a projected release date of July 15, 2016, via good conduct time credit, to be followed by 60 months of supervised release. (Doc. 10-1, p. 2.)

## DISCUSSION

In his Petition, Nunez asserts that he is entitled to receive 54 days' credit per year served against his federal sentence, as opposed to the 42 days' credit he is currently receiving. (Doc. 1, p. 4.) Specifically, Nunez contends that the BOP unfairly reduced his good conduct time from 54 days per year to 42 days per year, due to his exemption from the literacy program.[1] (Id.) Nunez further asserts that the BOP has unlawfully denied him participation in the BOP's Institution Hearing Program.[2] (Id. at p. 5.)

Respondents aver Nunez failed to exhaust his administrative remedies prior to filing his Petition, and therefore, his Petition should be dismissed. (Doc. 13, p. 5.) The Court addresses Respondents' contention.

### I. Whether Nunez Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is

---

[1] Pursuant to 18 U.S.C. § 3624(b)(1), the literacy program allows inmates to receive 54 days credit for each year served if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma. However, if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma, the inmate is eligible for only 42 days credit for each year served. 28 C.F.R. § 523.20(c). Because Nunez voluntarily withdrew from the literacy program, he has been awarded only 42 days credit for each year served.

[2] The Institution Hearing Program is a coordinated effort by the BOP, the Immigration and Customs Enforcement (ICE), and the Executive Office for Immigration Review (EOIR), to provide deportation, exclusion, or removal proceedings to sentenced aliens. (Doc. 13, p. 5.)

still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the Supreme Court recently "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[3]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the

---

[3] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are also applicable to habeas petitions.

3

course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

4

administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Nunez's Efforts at Exhaustion

In his Petition, Nunez concedes that he failed to exhaust administrative remedies, but contends that the Court should, nevertheless, grant him relief "without any consideration of administrative remedies." (Doc. 1, p. 2.) Nunez argues that utilizing the administrative remedy process at D. Ray James Correctional Facility would be futile because the administrative body at that facility is biased. (Id. at p. 3.) Nunez attributes the administrative body's alleged bias to the private nature of D. Ray James Correctional Facility, contending that "inmates like [himself] in private prison [are] at the mercy of corporate profits." (Id.) Accordingly, Nunez argues that his Petition should not be dismissed as a result of his failure to utilize the administrative grievance process prior to filing suit.

However, contrary to his previous assertions regarding exhaustion, in his Reply to Respondents' Response, Nunez appears to allege that he attempted to exhaust administrative

remedies. (Doc. 14, p. 2.) Specifically, Nunez states that he "submitted numerous cop-out[] to the counselor at the prison facility in order to resolve[] the situation of the good conduct credit, in which the counselor has advi[sed] [Petitioner] that he will take care [of] the situation." (Id.) Construing Nunez's pleading liberally, he has arguably alleged that he attempted to exhaust administrative remedies, but was unable to do so. As discussed above, under Turner Step One, the Court must accept as true Plaintiff's assertion that he attempted to exhaust his administrative remedies, but was unable to do so because the prison staff did not properly respond to a single cop-out or remedy. Thus, in an abundance of caution, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 13-1, p. 6.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id. at p. 7.) An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form. (Id.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[4] (Id. at p. 8.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at p. 9.)

---

[4] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

The evidence before the Court reveals Nunez has not filed any administrative remedy requests regarding the claims in his Petition. (Doc. 13-1, pp. 9, 69.) The Court finds Respondent's evidence on this point more credible than Nunez's unsupported and conclusory allegations regarding exhaustion. This conclusion is not only fortified by Respondents' submissions but also by Nunez's original indications that he did not exhaust his administrative remedies. (Doc. 1, pp. 2–3.) Thus, Nunez failed to file an administrative remedy as to his claims that he is entitled to 54 days' good conduct time as opposed to 42 days' good conduct time and that he is entitled to participate in the BOP's Institution Hearing Program. As set forth in footnote 4 of this Report, Nunez's claims concern BOP-related matters which must be appealed through the above-described process, which Nunez failed to do. Additionally, based on Respondents' submissions, the BOP's administrative remedies were available to Nunez, despite any contentions he may raise to the contrary. Consequently, the Court should **DISMISS** Nunez's Petition for failure to exhaust.

## II.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Nunez leave to appeal *in forma pauperis*. Though Nunez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Nunez's Petition, Respondents' Response, and Nunez's responsive pleading, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** without prejudice Nunez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Nunez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Nunez and Respondents.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 21st day of October, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA